**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**Tampa Division**

**MOHAMMAD MUNIEB ABUSAIF,** CASE NO.:

Plaintiff,

v.

**EQUIFAX INFORMATION SERVICES LLC, EXPERIAN INFORMATION SOLUTIONS, INC., TRANS UNION, LLC, JP MORGAN CHASE BANK, N.A, and I.C. SYSTEM, INC.,**

Defendants.

_________________________________________/

**PLAINTIFF'S COMPLAINT**
**JURY DEMAND**

1. Plaintiff, Mohammad Munieb Abusaif (hereinafter "Plaintiff" or "Mr. Abusaif"), brings this action against Defendants Equifax Information Services LLC ("Equifax"), Experian Information Solutions, Inc. ("Experian"), and Trans Union, LLC ("Trans Union") (collectively, the "credit reporting agencies" or "CRAs"), and against Defendant JP Morgan Chase Bank, N.A. ("CHASE") and I.C. System, Inc. ("IC System"), for violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.* (hereinafter the "FCRA").

**JURISDICTION AND VENUE**

2. This Court has jurisdiction under 28 U.S.C. § 1331 because this action arises under the laws of the United States.

3. Defendants' voluntary contact with Plaintiff in Florida made it foreseeable that they would be hailed into a Florida court. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985).

4. Venue here is proper under 28 U.S.C. § 1391 because a substantial part of the events giving

rise to the claim occurred in Polk County, Florida, where Plaintiff resides.

**PARTIES**

5. Plaintiff is a natural person who, at all times relevant to this action, is and was a resident of Polk County, Florida, and is a "consumer" as defined by 15 U.S.C. § 1681a(c).

6. Equifax is a "consumer reporting agency" as defined by the FCRA, 15 U.S.C. § 1681a(f). Equifax is a Georgia limited liability company incorporated under the laws of the State of Delaware that engages in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports as defined in 15 U.S.C. § 1681d to third parties.

7. Experian is a "consumer reporting agency" as defined by the FCRA, 15 U.S.C. § 1681a(f). Experian is an Ohio corporation incorporated under the laws of the State of Delaware that engages in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports as defined in 15 U.S.C. § 1681d to third parties.

8. Trans Union is a "consumer reporting agency" as defined by the FCRA, 15 U.S.C. § 1681a(f). Trans Union is a limited liability company incorporated under the laws of the State of Delaware, whose members are citizens of the State of Illinois, that engages in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports as defined in 15 U.S.C. § 1681d to third parties.

9. Defendant CHASE is a corporation that regularly conducts business in the State of Florida or is registered to conduct business in the state of Florida with a principal place of business located at 383 Madison Avenue, New York, NY 10179. At all relevant times, it was a "user" as defined by the FCRA. CHASE regularly furnishes information relating to consumers to consumer reporting agencies and is a "furnisher of information" within the meaning of 15 U.S.C. § 1681s-2.

10. Defendant IC System is a corporation that regularly conducts business in the State of Florida or is registered to conduct business in the state of Florida with a principal place of business located at 444 Highway 96 East, St. Paul, MN 55127. At all relevant times, it was a "user" as defined by the FCRA. IC System regularly furnishes information relating to consumers to consumer reporting agencies and is a "furnisher of information" within the meaning of 15 U.S.C. § 1681s-2.

11. Defendants use instrumentalities of interstate commerce for the purpose of furnishing and exchanging information concerning consumers, which instrumentalities are largely electronic, written, or telephonic communications that have effects on consumers and their credit reports within the State of Florida.

## STATUTORY FRAMEWORK OF THE FAIR CREDIT REPORTING ACT

12. The Fair Credit Reporting Act, 15 U.S.C. §1681 et. seq., was originally enacted in 1970 for the purpose of regulating the collection, dissemination, and use of consumer credit information.

13. Congress found that "[i]naccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence which is essential to the continued functioning of the banking system." See 15 U.S.C. §1681(a)(1).

14. "The aim of the Fair Credit Reporting Act is to see that the credit reporting system serves the consumer as well as the industry. The consumer has a right to information which is accurate; he has a right to correct inaccurate or misleading information; he has a right to know when inaccurate information is entered into his file; he has a right to see that the information is kept confidential and is used for the purpose for which it is collected; and he has a right to be free from unwarranted invasions of his personal privacy." The Fair Credit Reporting Act seeks to secure these rights." Hearings on S. 823 Before the Subcomm. on Financial Institutions of the S. Comm. on Banking and Currency, 91st Cong. 2 (1969).

15. A "furnisher of information" provides information about consumers' credit history to credit reporting agencies. See 15 U.S.C. §1681s-2.

16. Congress also found that "[c]onsumer reporting agencies have assumed a vital role in assembling and evaluating consumer credit and other information on consumers" and that "[t]here is a need to insure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy." See 15 U.S.C. § 1681(a)(3),(4).

17. The FCRA was amended by Congress in 2003 by the Fair and Accurate Credit Transaction Act ("FACTA"), Pub L. No. 108-159 (2003), in order to, among other things, "prevent identity theft, improve resolution of consumer disputes, [and] improve the accuracy of consumer records."

18. Prior to the 2003 amendments, victims of identity theft were afforded no special protections under the FCRA. As such, consumer reporting agencies ("CRAs", and also referred to herein as "credit reporting agencies") were under no obligation to treat an identity theft claim any different than a regular dispute.

19. The 2003 amendments made it easier for identity theft victims to get information resulting from identity theft removed from their credit reports. By enacting 15 U.S.C. § 1681c-2(a), Congress required credit reporting agencies to block the reporting of any information in the file of a consumer that the consumer identifies as resulting from identity theft, not later than four business days after receiving (1) appropriate proof of identity, (2) a copy of an identity theft report, (3) the identification of such information by the consumer, and (4) a statement by the consumer that the information is not information relating to any transaction by the consumer.

20. A credit reporting agency may decline to "block" information only if the credit

reporting agency reasonably determines that the consumer's request is made in error, was based on a material misrepresentation or the consumer obtained goods, services or money as a result of the blocked transaction. See 15 U.S.C. § 1681c-2(c)(1). 15. If a block is declined, the credit reporting agency must then notify the consumer promptly, in the same manner as consumers are notified of the reinsertion of information under § 1681i(a)(5)(B). See 15 U.S.C. §§ 1681c-2(c)(2).

21. In the absence of such a determination of material misrepresentation or error, a credit reporting agency cannot decline a request to block without first requesting additional information from the consumer for the purpose of determining the validity of the alleged identity theft. See 12 C.F.R. § 1022.3(i)(1)(iii)(A).

22. "[I]f a CRA receives a police report containing detailed information as well as the signature, badge number, or other identifying information for the officer taking the report, it is not reasonable for the CRA to request additional information without 'an identifiable concern,' such as an indication that the report was fraudulent." Osada v. Experian Info. Solutions, Inc., No. 11-C-2856, 2012 WL 1050067, at *3 (N.D. Ill. Mar. 28, 2012) (citing 16 C.F.R. § 603.3(c)(1) (renumbered at 12 C.F.R. § 1022.3(i)(3)(i)).

23. The FCRA requires a credit reporting agency to "follow reasonable procedures to assure maximum possible accuracy of the information" each time it prepares a consumer report. 15 U.S.C. § 1681e(b).

24. The FCRA requires that if a consumer disputes any item of information contained in their credit file, the credit reporting agency must "conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file in accordance with paragraph (5), before the

end of the 30-day period beginning on the date on which the agency receives the notice of the dispute from the consumer or reseller."15 U.S.C.S. § 1681i(a)(1)(A).

25. In performing the reinvestigation, the FCRA requires the credit reporting agency to "review and consider all relevant information submitted by the consumer in the period described in paragraph (1)(A) with respect to such disputed information." 15 U.S.C.S. § 1681i(a)(4).

26. The FCRA also requires the credit reporting agency to provide notification of the dispute to the person who provided any item that is disputed, along with all relevant information received from the consumer regarding the dispute. 15 U.S.C.S. § 1681i(a)(2)(A).

27. The FCRA requirements are important, because they help credit reporting agencies ensure that the information in their consumer reports is accurate, they assure that consumers know all the information that is in their files and who has received or requested their reports, and they protect consumer privacy.

28. If the violation is negligent, the FCRA allows the consumer to recover actual damages. 15 U.S.C. § 1681o(a).

29. If the violation is willful, the consumer may recover any actual damages, or statutory damages of not less than $100 and not more than $1,000, and punitive damages. 15 U.S.C. § 1681n(a).

30. A consumer who succeeds on a FCRA action is also entitled to recover their costs and reasonable attorney fees. 15 U.S.C. §§ 1681n(a)(3), 1681o(a)(2).

31. The FCRA provides a private right of action against any person that violates the provisions of the FCRA. See 15 U.S.C. §§ 1681o, 1681n.

32. The FCRA prohibits a CRA from furnishing a consumer report on a consumer unless it

has reason to believe that the person requesting the report intends to use the information in connection with a credit transaction, insurance underwriting, or other legitimate business purpose involving the consumer on whom the information is to be furnished. 15 U.S.C. § 1681b(a)(3).

33. The FCRA prohibits a CRA from furnishing to any person a record of inquiries in connection with a credit or insurance transaction that is not initiated by a consumer. 15 U.S.C. § 1681b(c)(3).

34. "Furnishers of information" under the FCRA, pursuant to 15 U.S.C. §1681s-2(b) conduct a reasonable investigation into each of the written disputes that it receives from the credit reporting agencies. See also Hinkle v. Midland Credit Mgmt., Inc., 827 F.3d 1295, 1302 (11th Cir. 2016).

35. The FCRA requires credit reporting agencies to "follow reasonable procedures to assure maximum possible accuracy of" consumer reports. 15 U.S.C. § 1681e(b). If a consumer disputes information contained in their credit report, the FCRA requires a credit reporting agency to "conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file in accordance with paragraph (5), before the end of the 30-day period beginning on the date on which the agency receives the notice of the dispute from the consumer or reseller."15 U.S.C.S. § 1681i(a)(1)(A).

36. If the disputed information is inaccurate or incomplete or cannot be verified, the consumer reporting agency "shall…(i) promptly delete that item of information from the file of the consumer, or modify that item of information, as appropriate, based on the results of the reinvestigation; and (ii) promptly notify the furnisher of that information that the information has been modified or deleted from the file of the consumer." 15 U.S.C. § 1681i(a)(5)(A)(i),(ii).

37. If the violation is negligent, the FCRA allows the consumer to recover actual damages (§ 1681o(a)); however, if the violation is willful, the consumer may recover any actual damages or statutory damages from not less than $100.00 and not more than $1,000. § 1681n(a).

38. Under the FCRA, the term "consumer report" generally refers to any written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for-

(A) credit or insurance to be used primarily for personal, family, or household purposes;

(B) employment purposes; or

(C) any other purpose authorized under section 1681b of this title."

15 U.S.C. § 1681a(d)(1).

39. The terms "consumer report", "credit report", and "consumer credit report" are used synonymously herein.

*National CRAs and Furnishers Communicate Consumer Disputes and Responses via the E-Oscar Reporting Platform*

40. The FCRA requires CRAs to implement an automated reinvestigation system through which furnishers of information to the CRAs may report the results of a reinvestigation that finds incomplete or inaccurate information in a consumer's file. 15 U.S.C. § 1681i(a)(5)(D).

41. To comply with the automated dispute reinvestigation requirements of the FCRA, Trans Union, Equifax, and Experian along with Innovis Data Solutions, Inc., developed and implemented a browser-based software system that allows the CRAs to electronically notify furnishers quickly and easily of disputed credit reporting information, and for furnishers to quickly and easily respond to such disputes following the furnisher's investigation of the disputed information.

42. The system is commonly referred to as e-OSCAR (Online Solution for Complete and Accurate Reporting) and was designed to be Metro 2 compliant. See http://www.e-oscar.org/gettingstarted (last accessed December 9, 2025).

43. The e-OSCAR system primarily supports Automated Credit Dispute Verification ("ACDV") and Automated Universal Data Form ("AUD") processing, as well as other consumer-dispute-related processes. See http://www.e-oscar.org/gettingstarted (last accessed December 9, 2025).

44. The National CRAs provide notice of a consumer's dispute to data furnishers in the ACDV format and forward the ACDV to the furnisher through e-OSCAR.

45. If a furnisher's investigation of a consumer's dispute determines that the information in dispute is incomplete or inaccurate, the FCRA requires the furnisher to correct the information not only with the CRA that sent the ACDV, but with all other CRAs to whom the furnisher reported that information. 15 U.S.C. § 1681s-2(b)(1)(D).

46. The e-OSCAR system facilitates the furnisher's compliance with 15 U.S.C. § 1681s-2(b)(1)(D) by sending a "Carbon Copy" of an ACDV response "to each CRA with whom the [furnisher] has a reporting relationship" in addition to the response to the initiating CRA. See http://www.e-oscar.org/gettingstarted (last accessed December 9, 2025).

47. Additionally, a furnisher can manually correct a tradeline with a CRA other than the one that initiated a dispute by sending an AUD within e-OSCAR.

48. Trans Union, Experian, and Equifax each require data furnishers that report to them respectively to register with and use e-OSCAR, and state that e-OSCAR is "in compliance with FCRA and Metro 2 standards." See https://www.transunion.com/data-reporting/support-teams (last accessed December 9, 2025).

## FACTUAL ALLEGATIONS

### I. BACKGROUND INFORMATION

49. Plaintiff is a documented victim of identity theft. An individual unlawfully used Plaintiff's personal identifying information to obtain multiple credit accounts without Plaintiff's knowledge, authorization or consent, incurring debt in Plaintiff's name and causing Plaintiff to suffer adverse credit and financial consequences.

50. That in further support of his identity theft claims, the Plaintiff filed an Identity Theft Report with the Federal Trade Commission ("FTC") on June 9, 2024, thereby taking all reasonable steps to notify law enforcement authorities and relevant agencies of fraudulent activities carried out in his name. Plaintiff also further reported the identity theft to law enforcement, specifically to the Haines City Police Department.

50. The FTC Identity Theft Report constitutes an "identity theft report" within the meaning of 15 U.S.C. § 1681a(q)(4).

51. Plaintiff thereafter submitted written dispute letters to the credit reporting agencies by certified mail. In each written dispute, Plaintiff identified the specific fraudulent items, stated that they resulted from identity theft and did not relate to any transaction by Plaintiff, enclosed proof of his identity together with his FTC Identity Theft Report, requested deletion of the fraudulent or inaccurate information and that the agency immediately block and remove the fraudulent information. Each written dispute was delivered to the respective agency as set forth below.

### II. DISPUTES WITH EQUIFAX and CHASE

52. Plaintiff mailed a dispute letter to Equifax, which was duly received by Equifax on November 23, 2025, including Plaintiff's FTC Identity Theft dated June 9, 2024 and his driver's license, disputing the address 7414 State Road 50, Groveland, Florida 34736, the

incorrect/incomplete name of his employer, several unauthorized soft inquiries and three (3) fraudulent accounts. The first disputed fraudulent account concerned a tradeline reported by American Express, Partial Account No. 8003, specifically Plaintiff disputed the tradeline as fraudulent as Plaintiff did not open this account. Equifax failed to block or remove the disputed tradeline. In Equifax's Investigation Result dated December 17, 2025, Equifax wrongfully verified that the account belongs to the Plaintiff. Upon reviewing a subsequent Equifax credit report dated December 25, 2025, Plaintiff found the disputed fraudulent tradeline had been again verified by Equifax. The second and third disputed fraudulent accounts concerned CHASE accounts with partial account number 5718 and partial account number 9914, Plaintiff specifically disputed these tradelines as fraudulent as Plaintiff did not open either account. Equifax failed to block or remove these CHASE accounts and failed to advise the outcome of their investigation results for both of these accounts. Upon reviewing a subsequent Equifax credit report dated December 25, 2025, Plaintiff found the disputed fraudulent CHASE tradelines had been verified by Equifax. Lastly, upon reviewing the Equifax credit report dated December 25, 2025, Plaintiff found the disputed soft inquiries, address and employer name had been deleted by Equifax.

53. Additionally, in Plaintiff's November 23, 2025 dispute letter to Equifax, Plaintiff requested pursuant to his rights under FCRA that a Consumer Statement be added to his Equifax credit file. No consumer statement of this kind was ever added to his subsequent credit report despite Plaintiff requesting the same.

**III. DISPUTES WITH EXPERIAN, CHASE and IC SYSTEM**

54. Plaintiff mailed a dispute letter to Experian, which was duly received by Experian on November 22, 2025, including Plaintiff's FTC Identity Theft Report dated June 9, 2024 and driver's license, disputing the addresses 335 N. Magnolia Ave., Apt. 7, Orlando, Florida 32801,

401 E. 7th Ave., Apt. 918, Tampa, Florida 33602, 7414 State Road 50, Groveland, Florida 34736, 7414 50, Groveland, FL 34736, the incorrect/incomplete name of his employer, several unauthorized soft inquiries, a hard inquiry from Citibank dated January 23, 2024, a notice that Plaintiff's social security number issue date was unverified, three (3) phone numbers, an unauthorized personal statement with a fraudulent phone number and four (4) fraudulent accounts. The first disputed fraudulent account concerned a tradeline reported by American Express, Partial Account No. 8003, specifically Plaintiff disputed the tradeline as fraudulent as Plaintiff did not open this account. Experian failed to block or remove the disputed tradeline. Upon reviewing a subsequent Experian credit report dated December 25, 2025, Plaintiff found the disputed fraudulent tradeline had been verified by Equifax. The second and third disputed fraudulent accounts concerned CHASE accounts with partial account number 4147 and partial account number 4246, Plaintiff specifically disputed these CHASE tradelines as fraudulent as Plaintiff did not open either account. Experian failed to block or remove these accounts and failed to advise the outcome of their investigation results for both of these accounts. Upon reviewing a subsequent Experian credit report dated December 25, 2025, Plaintiff found the disputed fraudulent tradelines had been verified by Experian. The fourth disputed fraudulent account concerned a tradeline reported by IC System, opened in January 29, 2024 and indicating a balance was owed of $578, Plaintiff disputed the tradeline as fraudulent as Plaintiff did not open this account or owe this debt. Experian failed to block or remove the disputed tradeline. Upon reviewing a subsequent Experian credit report dated December 25, 2025, Plaintiff found the disputed fraudulent tradeline had been verified by Experian. Lastly, upon reviewing the Experian credit report dated December 25, 2025, Plaintiff found the disputed soft inquiries, three addresses, three phone numbers, the unauthorized personal statement and employer name had been deleted by Experian.

55. Additionally, in Plaintiff's November 22, 2025 dispute letter to Experian, Plaintiff requested pursuant to his rights under FCRA that a Consumer Statement be added to his Experian credit file. No consumer statement of this kind was ever added to his subsequent credit report despite Plaintiff requesting the same.

**IV. DISPUTES WITH TRANS UNION**

56. Plaintiff mailed a dispute letter to Trans Union, which was duly received by Trans Union on November 22, 2025, including Plaintiff's FTC Identity Theft Report dated June 9, 2024 and driver's license, disputing two (2) wrong name variations, the addresses 335 N. Magnolia Ave., Apt. 7, Orlando, Florida 32801, 401 E. 7th Ave., Apt. 918, Tampa, Florida 33602, 7414 State Road 50, Groveland, Florida 34736, 7414 50, Groveland, FL 34736, the incorrect/incomplete name of his employer, several unauthorized inquiries, three (3) phone numbers, and six (6) fraudulent accounts. The first four (4) disputed fraudulent accounts concerned tradelines reported by American Express, Partial Account No. 1003, 2003, 3003 and 4003, Plaintiff specifically disputed the tradelines as fraudulent as Plaintiff did not open these accounts. Trans Union failed to block or remove the disputed tradelines. Upon reviewing a subsequent Trans Union credit report dated December 25, 2025, Plaintiff found the disputed fraudulent tradelines had been verified by Trans Union. The fifth and sixth disputed fraudulent accounts concerned CHASE accounts with partial account number 5718 and partial account number 9914, Plaintiff specifically disputed these CHASE tradelines as fraudulent as Plaintiff did not open either account. Trans Union failed to block or remove these accounts and failed to advise the outcome of their investigation results for both of these accounts. Upon reviewing a subsequent Trans Union credit report dated December 25, 2025, Plaintiff found the disputed fraudulent tradelines had been deleted by Trans Union. Lastly, upon reviewing the Trans Union credit report dated December 25, 2025, Plaintiff found

the disputed inquiries and three addresses were deleted by Trans Union, while they properly corrected his employer's name. However, Trans Union wrongfully verified two (2) name variations and three phone numbers (including a phone number believed to be the fraudster's phone number).

57. Additionally, in Plaintiff's November 22, 2025 dispute letter to Trans Union, Plaintiff requested pursuant to his rights under FCRA that a Consumer Statement be added to his Trans Union credit file. No consumer statement of this kind was ever added to his subsequent credit report despite Plaintiff requesting the same.

## V. THE FURNISHER DEFENDANT'S FAILURE TO INVESTIGATE

58. CHASE and IC System furnished their fraudulent tradelines to Equifax, Experian and Trans Union. After Plaintiff disputed the tradelines, Equifax, Experian and Trans Union each notified CHASE and IC System of the dispute by transmitting an ACDV to each of them through the e-OSCAR system. Upon receiving notice of the dispute, CHASE and IC System verified the fraudulent tradelines as accurate, or otherwise failed to correct or delete it, and reported that result back to Equifax, Experian and Trans Union, notwithstanding that the accounts were fraudulent and did not belong to Plaintiff.

## VI. PATTERN OF NONCOMPLIANCE AND PLAINTIFF'S INJURIES

59. Despite receiving Plaintiff's identity-theft documentation, including his FTC Identity Theft Report, neither Equifax, Experian, nor Trans Union acted to block or remove all of the disputed fraudulent tradelines. While the furnishers of information, CHASE and IC System failed to reasonably investigate the disputed tradeline and communicate the deletion or revision of fraudulent or inaccurate information as required.

60. Defendants' derogatory and inaccurate reporting of the above-described

tradelines or inquiries on Plaintiff's credit reports negatively reflects upon Plaintiff's financial obligations, credit score and credit worthiness to existing and potential creditors.

61. Courts have regularly held that allegations of lower credit scores, taken as true, are sufficient to allege a concrete injury-in-fact for the purposes of standing under Article III. See Pedro v. Equifax, Inc., 868 F.3d 1275 (11th Cir. 2017) ("[H]er credit score dropped 100 points as a result of the challenged conduct. Because Pedro alleged that she suffered an injury in fact, she has standing to pursue her complaint."); See Diedrich v. Ocwen Loan Servicing, LLC, 839 F.3d 583 (7th Cir. 2016) (standing where Plaintiffs alleged that they "have suffered damage to their credit and been forced to pay Ocwen greater payments and a higher interest rate"); See Santangelo v. Comcast Corp., 162 F. Supp. 3d 691 (N.D. Ill. 2016) ("a depleted credit score is sufficient to constitute an injury-in-fact for the purposes of establishing Article III standing"); See Rothman v. U.S. Bank Nat'l Ass'n, No. 13-03381, 2014 U.S. Dist. LEXIS 141100, 2014 WL 4966907, at *5 (N.D. Cal. Oct. 3, 2014) ("Injury to a credit score is sufficient to constitute 'actual damages'"); See Adams v. Fifth Third Bank, No. 3:16-CV-00218-TBR, 2017 U.S. Dist. LEXIS 18932 (W.D. Ky. Feb. 9, 2017) ("Plaintiffs' allegations of lower credit scores … are sufficient to allege a concrete injury-in-fact for the purposes of standing under Article III."); and, See Coulbertson v. Experian Info. Sols., Inc., No. 16-cv-05672-RS, 2017 U.S. Dist. LEXIS 69484 (N.D. Cal. Mar. 24, 2017) ("At a minimum, Coulbertson has alleged a sufficient injury-in-fact through her claim that her credit score suffered as a result of the credit report she disputes").

62. As a result of Defendants' conduct, including but not limited to the continued publication of inaccurate information concerning tradelines, Plaintiff suffered concrete injuries, including but not limited to emotional distress and manifestations of emotional distress associated with fraudulent information remaining in his credit files, damage to his reputation for credit

worthiness, loss of the ability to purchase and benefit from credit, time spent dealing with credit report disputes, expenses associated with credit report disputes and the deprivation of his statutory rights to accurate reporting and meaningful dispute resolution. These injuries are concrete and particularized and confer standing under Article III. See *Coulter v. Sagestream, LLC*, 501 F.Supp.3d 298 (2020); *Norman v. Trans Union, LLC*, 669 F.Supp.3d 351 (2023); *Chaitoff v. Experian Information Solutions, Inc.*, 79 F.4th 800 (2023).

**COUNT I - VIOLATIONS OF 15 U.S.C. §1681e(b)**
**AGAINST TRANS UNION**

63. Plaintiff incorporates by reference paragraphs 1, 3-5, 8, 11-51, and 56-62 as if fully stated herein.

64. Trans Union violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit report and credit files it publishes and maintains concerning the Plaintiff.

65. After receiving Plaintiff's dispute, Trans Union was placed on notice that it was reporting inaccurate information, yet Trans Union continues to include the inaccurate information in Plaintiff's credit file.

66. Trans Union's acts and/or omissions were willful, rendering it liable to Plaintiff for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n.

67. In the alternative, Trans Union negligently violated the FCRA entitling Plaintiff to recover under 15 U.S.C. §1681o.

WHEREFORE, Plaintiff prays this Honorable Court to enter the following relief against Trans Union in the form of actual damages, statutory damages, punitive damages, attorneys' fees, litigation expenses and costs, interest as permitted by law, and such other and further relief including as the Court deems equitable and just under the circumstances.

**COUNT II - VIOLATIONS OF 15 U.S.C. §1681i AGAINST TRANS UNION**

69. Plaintiff incorporates by reference paragraphs 1, 3-5, 8, 11-51, and 56-62 as if fully stated herein.

70. During the relevant time frame, Trans Union received Plaintiff's dispute which requested that fraudulent information be removed from his credit file.

71. Trans Union violated 15 U.S.C. § 1681i by failing to correct, update or delete inaccurate information in Plaintiff's credit file after receiving actual notice of inaccuracies contained therein. In addition, Trans Union specifically violated 15 U.S.C. § 1681i(c) by unreasonably failing to clearly note that the inaccurate accounts were disputed by Plaintiff and provide either the consumer's statement or a clear and accurate codification or summary thereof.

72. Trans Union's acts or omissions were willful, rendering it liable to Plaintiff for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n.

73. Alternatively, Trans Union negligently violated the FCRA entitling Plaintiff to recover under 15 U.S.C. §1681o.

WHEREFORE, Plaintiff prays this Honorable Court to enter the following relief against Trans Union in the form of actual damages, statutory damages, punitive damages, attorneys' fees, litigation expenses and costs, interest as permitted by law, and such other and further relief including as the Court deems equitable and just under the circumstances.

**COUNT III - VIOLATIONS OF 15 U.S.C. § 1681c-2 AGAINST TRANS UNION**

74. Plaintiff incorporates by reference paragraphs 1, 3-5, 8, 11-51, and 56-62 as if fully stated herein.

75. At all times relevant hereto, Trans Union is and was a "consumer reporting agency," and

Plaintiff was a "consumer," as provided for under the FCRA.

76. Plaintiff identified to Trans Union information in his file that resulted from identity theft, provided proof of identity, provided an identity theft report in the form of his FTC Identity Theft Report, and stated that the information did not relate to any transaction by Plaintiff.

77. Trans Union violated 15 U.S.C. § 1681c-2 by failing to block, within four business days of receipt, the reporting of the fraudulent CHASE or American Express tradelines that Plaintiff identified as resulting from identity theft.

78. Trans Unions' acts or omissions were willful, rendering it liable to Plaintiff for statutory and punitive damages pursuant to 15 U.S.C. § 1681n; in the alternative, TransUnion negligently violated the FCRA, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

WHEREFORE, Plaintiff prays this Honorable Court to enter the following relief against Trans Union in the form of actual damages, statutory damages, punitive damages, attorney's fees, litigation expenses and costs, interest as permitted by law, and such other and further relief as the Court deems equitable and just under the circumstances.

## COUNT IV - VIOLATIONS OF 15 U.S.C. §1681i AGAINST EXPERIAN

79. Plaintiff incorporates by reference paragraphs 1, 3-5, 7, 11-51, 54-55, and 58-62 as if fully stated herein.

80. During the relevant time frame, Experian received Plaintiff's dispute which requested that information be removed from his credit file.

81. Experian violated 15 U.S.C. § 1681i by failing to correct, update or delete

inaccurate information in Plaintiff's credit file after receiving actual notice of inaccuracies contained therein. In addition, Experian specifically violated 15 U.S.C. § 1681i(c) by unreasonably failing to clearly note that the inaccurate accounts were disputed by Plaintiff and provide either the consumer's statement or a clear and accurate codification or summary thereof.

82. Experian's acts or omissions were willful, rendering it liable to Plaintiff for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n.

83. Alternatively, Experian negligently violated the FCRA entitling Plaintiff to recover under 15 U.S.C. §1681o.

WHEREFORE, Plaintiff prays this Honorable Court to enter the following relief against Experian in the form of actual damages, statutory damages, punitive damages, attorneys' fees, litigation expenses and costs, interest as permitted by law, and such other and further relief including as the Court deems equitable and just under the circumstances.

**COUNT V - VIOLATIONS OF 15 U.S.C. §1681e(b)**
**AGAINST EXPERIAN**

84. Plaintiff incorporates by reference paragraphs 1, 3-5, 7, 11-51, 54-55, and 58-62 as if fully stated herein.

85. Experian violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit report and credit files it publishes and maintains concerning the Plaintiff.

86. After receiving Plaintiff's disputes, Experian was placed on notice that it was reporting inaccurate information, yet Experian continued to include the inaccurate information in Plaintiff's credit file.

87. Experian's acts and/or omissions were willful, rendering it liable to Plaintiff for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n.

88. In the alternative, Experian negligently violated the FCRA entitling Plaintiff to recover under 15 U.S.C. §1681o.

WHEREFORE, Plaintiff prays this Honorable Court to enter the following relief against Experian in the form of actual damages, statutory damages, punitive damages, attorneys' fees, litigation expenses and costs, interest as permitted by law, and such other and further relief including as the Court deems equitable and just under the circumstances.

**COUNT VI - VIOLATIONS OF 15 U.S.C. § 1681c-2**
**AGAINST EXPERIAN**

89. Plaintiff incorporates by reference paragraphs 1, 3-5, 7, 11-51, 54-55, and 58-62 as if fully stated herein.

90. At all times relevant hereto, Experian is and was a "consumer reporting agency," and Plaintiff was a "consumer," as provided for under the FCRA.

91. Plaintiff identified to Experian information in his file that resulted from identity theft, provided proof of identity, provided an identity theft report in the form of his Police Report, and stated that the information did not relate to any transaction by Plaintiff.

92. Experian violated 15 U.S.C. § 1681c-2 by failing to block, within four business days of receipt, the reporting of the fraudulent CHASE, IC SYSTEM or American Express tradelines that Plaintiff identified as resulting from identity theft.

93. Experian's acts or omissions were willful, rendering it liable to Plaintiff for statutory and punitive damages pursuant to 15 U.S.C. § 1681n; in the alternative, Experian negligently violated the FCRA, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

WHEREFORE, Plaintiff prays this Honorable Court to enter the following relief against Experian in the form of actual damages, statutory damages, punitive damages, attorney's fees, litigation expenses and costs, interest as permitted by law, and such other and further relief as the Court deems equitable and just under the circumstances.

**COUNT VII - VIOLATIONS OF 15 U.S.C. §1681i
AGAINST EQUIFAX**

94. Plaintiff incorporates by reference paragraphs 1, 3-6, 11-53, and 58-62 as if fully stated herein.

95. During the relevant time frame, Equifax received Plaintiff's disputes which requested that information be removed from his credit file.

96. Equifax violated 15 U.S.C. § 1681i by failing to correct, update or delete inaccurate information in Plaintiff's credit file after receiving actual notice of inaccuracies contained therein. In addition, Equifax specifically violated 15 U.S.C. § 1681i(c) by unreasonably failing to clearly note that the inaccurate accounts were disputed by Plaintiff and provide either the consumer's statement or a clear and accurate codification or summary thereof.

97. Equifax's acts or omissions were willful, rendering it liable to Plaintiff for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n.

98. Alternatively, Equifax negligently violated the FCRA entitling Plaintiff to recover under 15 U.S.C. §1681o.

WHEREFORE, Plaintiff prays this Honorable Court to enter the following relief against Equifax in the form of actual damages, statutory damages, punitive damages, attorneys' fees, litigation expenses and costs, interest as permitted by law, and such other and further relief including as the Court deems equitable and just under the circumstances.

**COUNT VIII - VIOLATIONS OF 15 U.S.C. §1681e(b)**
**AGAINST EQUIFAX**

99. Plaintiff incorporates by reference paragraphs 1, 3-6, 11-53, and 58-62 as if fully stated herein.

100. Equifax violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit report and credit files it publishes and maintains concerning the Plaintiff.

101. After receiving Plaintiff's dispute, Equifax was placed on notice that it was reporting inaccurate information, yet Equifax continued to include the inaccurate information in Plaintiff's credit file.

102. Equifax's acts and/or omissions were willful, rendering it liable to Plaintiff for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n.

103. In the alternative, Equifax negligently violated the FCRA entitling Plaintiff to recover under 15 U.S.C. §1681o.

WHEREFORE, Plaintiff prays this Honorable Court to enter the following relief against Equifax in the form of actual damages, statutory damages, punitive damages, attorneys' fees, litigation expenses and costs, interest as permitted by law, and such other and further relief including as the Court deems equitable and just under the circumstances.

**COUNT IX - VIOLATIONS OF 15 U.S.C. § 1681c-2**
**AGAINST EQUIFAX**

104. Plaintiff incorporates by reference paragraphs 1, 3-6, 11-53, and 58-62 as if fully stated herein.

105. At all times relevant hereto, Equifax is and was a "consumer reporting agency," and Plaintiff was a "consumer," as provided for under the FCRA.

106. Plaintiff identified to Equifax information in his file that resulted from identity theft, provided proof of identity, provided an identity theft report in the form of his FTC Identity Theft Report, and stated that the information did not relate to any transaction by Plaintiff.

107. Equifax violated 15 U.S.C. § 1681c-2 by failing to block, within four business days of receipt, the reporting of the fraudulent CHASE or American Express tradelines that Plaintiff identified as resulting from identity theft.

108. Equifax's acts or omissions were willful, rendering it liable to Plaintiff for statutory and punitive damages pursuant to 15 U.S.C. § 1681n; in the alternative, Equifax negligently violated the FCRA, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

WHEREFORE, Plaintiff prays this Honorable Court to enter the following relief against Equifax in the form of actual damages, statutory damages, punitive damages, attorney's fees, litigation expenses and costs, interest as permitted by law, and such other and further relief as the Court deems equitable and just under the circumstances.

**COUNT X - VIOLATIONS OF 15 U.S.C. §1681s-2(b)
AGAINST CHASE**

109. Plaintiff incorporates by reference paragraphs 1, 3-5, 9, 11-62 as if fully stated herein.

110. CHASE is a furnisher under the FCRA because it provides consumer credit information concerning consumers to credit reporting agencies.

111. CHASE violated 15 U.S.C. §1681s-2(b) by failing to fully and properly

investigate Plaintiff's disputes when it failed to review all relevant information provided by the credit reporting agencies and timely communicate with the credit reporting agencies to block or delete disputed information or tradelines.

112. As a result of CHASE's violations of the FCRA, Plaintiff has been damaged. CHASE negligently violated FCRA entitling Plaintiff to recover under 15 U.S.C. §1681o. Additionally, CHASE committed a willful violation of the FCRA entitling Plaintiff to recover under 15 U.S.C. §1681n(a).

113. Plaintiff is entitled to an award of prevailing party attorney's fees pursuant to 15 U.S.C. §1681.

WHEREFORE, Plaintiff prays this Honorable Court to enter the following relief against Chase in the form of actual damages, statutory damages, punitive damages, Attorneys' fees, litigation expenses and costs, interest as permitted by law, and such other and further relief as the Court deems equitable and just under the circumstances.

**COUNT XI - VIOLATIONS OF 15 U.S.C. §1681s-2(b)**
**AGAINST IC SYSTEM**

114. Plaintiff incorporates by reference paragraphs 1, 3-5, and 10-62 as if fully stated herein.

115. IC System is a furnisher under the FCRA because it provides consumer credit information concerning consumers to credit reporting agencies.

116. IC System violated 15 U.S.C. §1681s-2(b) by failing to fully and properly investigate Plaintiff's disputes when it failed to review all relevant information provided by the credit reporting agencies and timely communicate with the credit reporting agencies to block or delete disputed information or tradelines.

117. As a result of IC System's violations of the FCRA, Plaintiff has been damaged.

IC System negligently violated FCRA entitling Plaintiff to recover under 15 U.S.C. §1681o. Additionally, IC System committed a willful violation of the FCRA entitling Plaintiff to recover under 15 U.S.C. §1681n(a).

118. Plaintiff is entitled to an award of prevailing party attorney's fees pursuant to 15 U.S.C. §1681.

WHEREFORE, Plaintiff prays this Honorable Court to enter the following relief against IC System in the form of actual damages, statutory damages, punitive damages, Attorneys' fees, litigation expenses and costs, interest as permitted by law, and such other and further relief as the Court deems equitable and just under the circumstances.

**JURY DEMAND**

Plaintiff demands a trial by jury on all issues so triable.

Dated: 09/02/2026

Respectfully submitted,

SHARMIN & SHARMIN, P.A.

/s/ Eyal S. Eisig
Eyal S. Eisig, Esq.
eyal@sharminlaw.com
FBN: 109438
830 North Federal Highway
Lake Worth Beach, FL 33460
Main: 561-655-3925
Fax: (844) 921-1022

Attorneys for Plaintiff